PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**October 8, 2009**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____ DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| In re:<br><br>CHARLES JOSEPH MORGEN and NANCY DIANE MORGEN,<br><br>Debtors. | Case No. 08-41362 |
| CHARLES HUTCHINSON and CATHY HUTCHINSON, husband and wife, and their marital community,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES JOSEPH MORGEN and NANCY DIANE MORGEN, husband and wife, and their marital community,<br><br>Defendants. | Adversary No. 08-4080<br><br>**MEMORANDUM DECISION**<br><br>**NOT FOR PUBLICATION** |

Trial was held in this matter on September 21 and 22, 2009. Charles and Cathy Hutchinson (Plaintiffs), in accordance with their complaint, seek to have the debt owed by Defendants Charles and Nancy Morgen (Debtors) declared nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2), (4) and (6)[1]. Defendant Charles Morgen, in his individual capacity,

---

[1] Unless otherwise indicated, all "Code," Chapter and Section references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, as amended by BAPCPA, Pub. L. 109-8, 119 Stat. 23, as this case was filed after October 17, 2005, the effective date of most BAPCPA provisions.

MEMORANDUM DECISION - 1

was dismissed at the conclusion of the Plaintiffs' case. At the conclusion of the trial, the Court took the matter under advisement. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## FINDINGS OF FACT

Defendant Nancy Morgen (Debtor) is a real estate salesperson and part owner of AccuTrust Real Estate (AccuTrust). Charles Hutchinson (Plaintiff) is the owner of a number of unrelated businesses and has also developed, bought and sold real estate for a number of years. The Plaintiff and Debtor have a history of doing business together related to the buying and selling of real estate.

In the summer of 2005, the Debtor approached the Plaintiff about purchasing a parcel of improved real estate (RV Park) fronting the Pacific Ocean in Long Beach, Washington. The RV Park consisted of several acres of land, including out buildings, a children's playground, and recreational vehicle and tent sites, extending from the public highway to the sand dunes of the Pacific Ocean. The seller of the RV Park was Marilynn Mazie (Mazie). The Debtor was orally advised by Mazie that she had aborted a prior survey of the RV Park, and that a few tickets had been written over the years by Pacific County or the State of Washington Parks Department to RV Park customers for trespass. The Debtor and the Plaintiff were provided a copy of what was asserted to be a survey prepared by Bluhm & Associates (Bluhm Report), who were land surveyors. The Bluhm Report appeared to indicate that the RV Park boundaries included the north road and extended west to the sand dunes. The real estate file concerning the RV Park held at AccuTrust, however, contained several documents that, when read together, indicated that the State of Washington claimed an ownership interest in the

MEMORANDUM DECISION - 2

western portion of the RV Park, which included the playground, north road, all of the tent sites and at least one recreational vehicle site. Mazie testified that she advised the Debtor that the north road dispute had been resolved.

The title report given to the Plaintiffs at closing referenced a 1959 Pacific County Superior Court case where a judgment set the western boundary of the RV Park. A copy of the judgment was also found in the AccuTrust file. The Debtor was agent for both Mazie and the Plaintiffs, and received a total real estate commission at closing of $100,000.00, 25% paid by the Plaintiffs and 75% by Mazie.

The Plaintiff alleges that the Debtor represented that the RV Park property included all of the tent sites, playground, north road and extended well back to the sand dunes, which would allow unfettered access of the Pacific Ocean. Within several months after the sale closed, the Plaintiffs were contacted by the State of Washington Parks Department who claimed an ownership interest in a portion of the RV Park property, including all 69 of the rentable tent sites, at least one RV site, the north road and the playground. The matter is currently in litigation in Washington State Superior Court, Pacific County.

The Plaintiffs' allegations also concern a second parcel of real estate. In early 2006, the Debtor approached the Plaintiff indicating that she had several potential developers interested in purchasing Plaintiffs' 44 acre parcel known as Lexington Heights (Lexington) for at least $2,500,000. Gregory Lund (Lund), a purchaser located by the Debtor, subsequently offered $3,000,000.00 for the Lexington property. Lund was a residential home builder and was familiar with both the Lexington property and the Plaintiff, having previously purchased approximately 20 unimproved lots at Lexington from Plaintiff to construct single family residential units for resale. A Vacant Land Purchase and Sale Agreement was entered into

MEMORANDUM DECISION - 3

with Lund on or about February 15, 2006, and provided for a purchase price of $3,000,000.00, with $1,000,000.00 to be paid as a down payment. The cost of the down payment to Lund was $400,000. At closing in April, 2006, the Plaintiffs agreed to subordinate their interest in Lexington to Lund's lender.

After Lund's purchase of the Lexington property closed, the Plaintiff alleges that he first became aware that Lund was not an experienced developer and did not have financing in place for the development of the property. Further, the Plaintiff alleges that the Debtor had misrepresented to Lund that the Lexington property would support a development of between 100 and 120 buildable residential lots, when the property would support far fewer. Allegedly, as a result of these misrepresentations, Lund quickly defaulted and the Plaintiffs were subsequently forced to discount the purchase price of the Lexington property by $800,000 and to forgive accrued interest totaling $100,000. A modification and amendment to the February 15, 2006, purchase and sale agreement was signed in October, 2006. The modification required the Plaintiffs to further subordinate their interest to third position.

Lund once again defaulted. The Plaintiffs' interest in the Lexington property currently has no value since the first and second position lenders have foreclosed their interest. The Plaintiffs assert that their loss was proximately caused by misrepresentations of the Debtor.

**CONCLUSIONS OF LAW**

**A. Real Party in Interest**

After the Plaintiffs rested their case, the Debtor orally moved for dismissal of the Plaintiffs' case on several grounds, including the failure to prosecute their claims in the name of the real party in interest. The Debtor argues that the Plaintiffs are not the proper parties because they transferred their individual interest in the RV Park to Land's End RV Park, Inc.

by quit claim deed dated August 6, 2007, and the Lexington property was always held by Plaintiffs' wholly owned corporation, Land's End of Cowlitz County, Inc.

Fed. R. Civ. P. 17, which is made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7017, provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3).

In response to the Debtor's motion to dismiss, the Plaintiffs moved orally at trial for joinder of Land's End RV Park, Inc., Land's End of Cowlitz County, Inc. and Land's End of Cowlitz County, LLC. The Plaintiffs also formally moved for joinder on September 29, 2009, in a memorandum filed with the Court after trial. The Court concludes that joinder in this case is proper.

The Advisory Committee Note to Fed. R. Civ. P. 17 explains that the purpose of this rule is "simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." Fed. R. Civ. P. 17 advisory committee's note (1966). In addition to moving for joinder, the Plaintiffs have also filed a document entitled "Ratification," in which the parties seek to ratify the commencement of and authorize the continuation of this lawsuit, and agree to be bound by the result. The Plaintiffs have therefore satisfied the concern of Fed. R. Civ. P. 17 that the Debtor will not be faced with multiple lawsuits.

In addition, although the Debtor raised failure to state a cause of action upon which relief can be granted under Fed. R. Civ. P. 12 (b)(6) as a defense in her answer, Fed. R. Civ.

MEMORANDUM DECISION - 5

P. 17 was not raised until after the Plaintiffs rested their case at trial. As the August 6, 2007 Quit Claim Deed was an exhibit submitted by the Debtor, and the Lexington property was always in the name of the corporation, the Court further finds that the issue should have been raised by the Debtor earlier and has since been waived. See Sun Ref. & Mktg. Co. v. Goldstein Oil Co., 801 F.2d 343, 345 (8th Cir. 1986) (real party in interest defense raised after trial was waived).

## B. 11 U.S.C. § 523(a)(2)(A)

The Plaintiffs allege that the debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A). For a debt to be nondischargeable under § 523(a)(2)(A), a creditor must prove actual fraud. In the Ninth Circuit, a creditor cannot prove actual fraud without establishing by a preponderance of the evidence:

> (1) [that] the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; [and] (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

Citibank (South Dakota), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1086 (9th Cir. 1996).

The Plaintiff testified that the Debtor misrepresented to him that she had several experienced developers interested in the property, with funding in place and a business plan. The Plaintiff further alleges that the Debtor misrepresented to the purchaser that the property was approved for development of 125 residential lots, rather than 41.

Notwithstanding any representations by the Debtor to Lund, the Plaintiff having met with the Debtor prior to entering into the Lexington transaction was aware, or should have been, that Lund was not an experienced developer, did not have funding in place and intended to develop more lots than were available. The Plaintiff did prior business with Lund, met with him, and agreed to loan him his own project manager during and after the feasibility

period in order to assist in the development of the Lexington property. There was clearly confusion over how many lots were remaining to be developed. The listing indicated 41 residential lots, but the Plaintiff also approved a listing agreement stating that he was selling 100 to 120 lots, depending on the layout. The Plaintiff also voluntarily agreed to subordinate to Lund's 1.4 million dollar debt, prior to closing, apparently without asking him about his business plan or how he was going to finance the project. Under these circumstances there is not sufficient evidence to establish that the Debtor knew any of the representations she made to the Plaintiff were false, intended to deceive the Plaintiff, that the Plaintiff justifiably relied on those representations or suffered a loss proximately caused by the Debtor's alleged misrepresentations.

The Plaintiff also alleges that the Debtor intentionally failed to disclose to him that there was a dispute over the RV Park boundaries. In support of this allegation, the Plaintiff relies on documents contained in the AccuTrust file that he never received.

Proof of a loss proximately caused by the Debtor's misrepresentation is an essential element of the Plaintiffs' § 523(a)(2)(A) claim. The Plaintiff admitted at trial that any damages related to this claim are dependent upon the outcome of the pending litigation filed against the Plaintiffs in Pacific County Superior Court by the State of Washington. If the Plaintiffs are successful in defending against this lawsuit, they may have smaller or no damage. Although Plaintiffs' counsel stated at closing that the Plaintiffs may be experiencing damages even as the lawsuit is pending in that they are constrained from alienating the RV Park, no evidence was presented to support such a damage claim.

"Ripeness is more than a mere procedural question; it is determinative of jurisdiction." S. Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 502 (9th Cir. 1990). The ripeness

MEMORANDUM DECISION - 7

doctrine is based in part upon the Article III requirement that courts decide only cases or controversies. W. Oil and Gas Ass'n v. Sonoma County, 905 F.2d 1287, 1290 (9th Cir. 1990) (citing Regional Rail Reorganization Act Cases, 419 U.S. 102, 138, 95 S. Ct. 335, 356 (1974)). "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." S. Pac. Transp. Co., 922 F.2d at 502.

A justiciable controversy must exist before a court's jurisdiction may be invoked. Nollette v. Christianson, 115 Wn.2d 594, 598-99, 800 P.2d 359 (1990). A justiciable controversy is:

"(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

Nollette, 115 Wn.2d at 599 (quoting Diversified Indus. Dev. Corp. v. Ripley, 82 Wn.2d 811, 815, 514 P.2d 137 (1973)).

This Court is not willing to issue an advisory opinion as to the dischargeability of this claim. This claim is not ripe for adjudication as there is no evidence regarding the extent of the Plaintiffs' damage, if any, as of the date of trial. If necessary the parties may re-note the issue for determination by this Court after the Pacific County lawsuit is resolved.

### C. 11 U.S.C. § 523(a)(4)

At the conclusion of the Plaintiffs' case, the Debtor moved for a directed verdict on the issues concerning 11 U.S.C. § 523(a)(4). The Court granted the motion.

The Plaintiffs allege that the Debtor stole or embezzled $251,250 from them. This amount was the remaining portion of a $300,000 commission owed on the sale of the Lexington property by the Plaintiffs to Lund. In the loan closing statement, it appears that this money was, for reasons unknown, sent to Kenneth Montgomery, the lender to Lund in first

MEMORANDUM DECISION - 8

position on the Lexington property. The owner/broker of AccuTrust, however, testified that the commission is still due and owing. Although the testimony of the owner/broker was not entirely consistent, the Court finds his testimony that AccuTrust is still owed the commission to be the more credible. If AccuTrust did not receive the full amount owing, any cause of action against the Debtor lies with AccuTrust.

Larceny is the fraudulent and wrongful taking of money that belongs to another with the intent of permanently depriving that party of ownership. Vans Inc. v. Rosendahl (In re Rosendahl), 307 B.R. 199, 216 (Bankr. D. Or. 2004). There has been no evidence linking the Debtor to Mr. Montgomery's receipt of commission payments, or establishing that either of them are guilty of larceny in regards to the manner in which the commissions were paid. Further, as stated above, assuming that there was a wrongful taking, the cause of action would lie with AccuTrust or other owners of AccuTrust, not with the Plaintiffs. The Plaintiffs agreed to pay the entire commission and cannot bring a cause of action in their own right alleging that the payment should have gone to AccuTrust instead of Montgomery. Lastly, the Plaintiffs acknowledged at trial that the Debtor, as a real estate agent, owed no fiduciary duty to them.

### D. 11 U.S.C. § 523(a)(6)

11 U.S.C. § 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or the property of another entity." What constitutes a "willful and malicious injury" has been clarified by the U.S. Supreme Court to mean a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger (In re Geiger), 523 U.S. 57, 61, 118 S. Ct. 974, 977 (1988). A "malicious" injury involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1209 (9th Cir. 2001) (quoting In re Bammer, 131 F.3d 788, 791 (9th Cir. 1997) (quotations omitted)).

The willful injury requirement of 11 U.S.C. § 523(a)(6) is satisfied "when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." Jercich, 238 F.3d at 1208. It is irrelevant that there may have been objective substantial certainty that the debtor's conduct would result in injury. Carrillo v. Su (In re Su), 259 B.R. 909, 913 (9th Cir. BAP 2001).

There was not sufficient evidence presented to establish that any representation the Debtor made to the Plaintiffs or Lund concerning the Lexington property was made with an intent to cause injury to the Plaintiffs. Prior to entering into the Lexington transaction, the Plaintiff met with Lund and was aware, particularly as he felt it necessary to loan to him his own project manager, that Lund was not an experienced developer. Further, the Plaintiff voluntarily agreed to subordinate his debt before completing the transaction, without making any inquiry of Lund at one of their meetings as to his business plan or ability to finance the project. The Plaintiffs have not met their burden of proof in establishing that the conduct of the Debtor rose to the level of a violation of 11 U.S.C. § 523(a)(6) with regard to the Lexington property.

For the same reasons stated above, the Court will refrain from determining the nondischargeability of any debt related to the RV Park under 11 U.S.C. § 523(a)(6) until the matter is ripe for adjudication in this Court.

DATED: October 8, 2009

*Paul B. Snyder*
_____
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 10